UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNDERWRITERS AT LLOYD'S
LONDON,

    Plaintiffs

v.                                    Case No.: 8:05-CV-1460-T-17TGW

CAROL OSTING-SCHWINN,
as parent and legal guardian of
C.O., a minor,

    Defendant.
_____/

## DEFENDANT, CAROL OSTING SCHWINN'S, MOTION TO DISMISS FIRST AMENDED COMPLAINT

Defendant, CAROL OSTING SCHWINN, as parent and legal guardian of C.O., a minor, by and through her undersigned counsel, and pursuant to Fed. R. Civ. P. 12(b), hereby moves this Honorable Court to dismiss this action for the reasons enumerated below, and as grounds therefore states:

1. Plaintiffs' First Amended Complaint [Dkt. 7] seeks two alternative forms of relief. Count I of the First Amended Complaint, labeled "Breach of Contract," appears to seek the specific performance by the Defendant of an alleged settlement agreement. Count II alternatively requests a declaratory judgment ruling that the same alleged settlement agreement precludes the prosecution of a lawsuit against third parties.

2. Counts I and II of Plaintiffs' First Amended Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) and 17(a) because Plaintiffs have failed to allege facts regarding the citizenship of the real parties in interest which is necessary for conferring

diversity jurisdiction on this Court. Both counts should also be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) and 17(b)(1), because Plaintiffs do not have the capacity to sue as the unincorporated association "Underwriters at Lloyd's, London."

3. Counts I and II should be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(7) for failure to join a party under Rule 19.

4. Count II should be dismissed with prejudice under this Court's discretionary jurisdiction under 28 U.S.C.A. § 2201, the Declaratory Judgment Act.

5. Additionally, both Counts I and II should be dismissed as improper attempts at forum shopping.

## **FACTS**

6. This action arises out of a collision between a dirt bike ridden by Michael Rockhill, Jr. and a four-wheel All Terrain Vehicle ("ATV") ridden by C.O., the minor son of the Defendant, Carol Osting Schwinn, on May 7, 2002.

7. Michael Rockhill, Sr., the father of Michael Rockhill, Jr., and the owner of the property on which the collision occurred, was the co-owner of the dirt bike with his son. The Rockhills were insured for this loss under a policy of insurance underwritten by the Plaintiffs, Underwriters at Lloyd's, London.

8. On July 21, 2005, Defendant filed a negligence action against Michael Rockhill, Sr. and Michael Rockhill, Jr., for damages arising out of this collision, in the Circuit Court for the Thirteenth Judicial Circuit, in Hillsborough County, Florida, Case No. 05-CA-006257. A copy of the complaint filed by Defendant in this state-court action is attached hereto as Exhibit A.

9. Michael Rockhill, Jr. filed his answer to that negligence complaint on August 15, 2005. He denied liability for the damages, and asserted various affirmative defenses, including an affirmative defense alleging that the controversy had previously been settled. A copy of Michael Rockhill, Jr.'s Answer, Demand for Jury Trial and Affirmative Defenses is attached hereto as Exhibit B.

10. After Defendant filed her Motion to Dismiss the Complaint in the instant action [Dkt. 5], which was rendered moot by the filing of Plaintiffs' First Amended Complaint, Michael Rockhill, Jr. withdrew the affirmative defense of settlement in the state court negligence action. A copy of this Notice of Withdrawal, which was filed on or about September 29, 2005, is attached hereto as Exhibit C.

11. On or about September 30, 2005, Michael Rockhill, Sr. filed his answer and affirmative defenses to the Complaint filed by Carol Osting Schwinn in the Circuit Court for the Thirteenth Judicial Circuit, in Hillsborough County, Florida, Case No. 05-CA-006257. That answer is attached hereto as Exhibit D.

12. Defendant's negligence action against Michael Rockhill, Sr. and Michael Rockhill, Jr. is currently pending in the state court.

13. Defendant, Carol Osting Schwinn, is a citizen of the state of Florida.

14. Michael Rockhill, Jr. is a citizen of the state of Florida. See Paragraph 4 of Exhibit B.

15. Michael Rockhill, Sr. has denied that he is a citizen of the state of Florida. See Paragraph 5 of Exhibit D.

16.     The release which Plaintiffs now seek to have Defendant execute in Count I names Michael Rockhill, Sr., Michael Rockhill, Jr. and Vicki Rockhill as the "releasees." Defendant's May 26, 2005, correspondence, enclosing this release, is attached hereto as Exhibit E.

## MEMORANDUM OF LAW

### I.     This Action Should be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(1) for Lack of Subject Matter Jurisdiction

The First Amended Complaint should be dismissed under Fed. R. Civ. P. 12(b)(1) because this Court does not have subject matter jurisdiction.  Rule 12(b)(1) provides for a motion to dismiss for "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). Plaintiffs' First Amended Complaint in this action does not establish the facts necessary to confer jurisdiction on this Court.  The First Amended Complaint states that "Underwriters subscribe to policy number UT01AS83, issued under Certificate number LLMH00447, the named insured of which is Rockhill.  Underwriters are citizens of the United Kingdom." Dkt. 7, Paragraph 2.

First, Plaintiffs do not have the capacity to sue in the name of the unincorporated association, "Underwriters at Lloyd's, London."  Because Plaintiffs do not have the capacity to sue in their associational name, the suit must be brought in the name of the real parties in interest, who are the individual members of the association.  Each member of the association must be named as a plaintiff, and the citizenship of each member must be alleged in order to establish diversity jurisdiction.

4

### a. Capacity to Sue

The First Amended Complaint makes no allegations regarding the status of "Underwriters at Lloyd's, London" as a business entity, or the capacity of that entity to sue. As the party seeking to invoke federal diversity jurisdiction, Plaintiffs have not met their burden of showing the facts necessary for such jurisdiction. Laborers Local 938 Joint Health & Welfare Trust Fund v. B.R. Starnes Co. of Fla., 827 F.2d 1454, 1457 (11th Cir. 1987); Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C., 374 F.2d 1020, 1022 (11th Cir. 2004). The allegations of the First Amended Complaint do not provide any insight into the status of the entity. For instance, if Underwriters at Lloyd's, London is a corporation, the principal place of business of that corporation must be alleged. Carden v. Arkoma Assoc., 494 U.S. 185 (1990). Plaintiffs have not alleged facts showing that they have the capacity to sue in the name of their unincorporated association, "Underwriters at Lloyd's, London." Plaintiffs are incapable of making the necessary showing, and instead, must sue in the names of all interested parties who are the real parties in interest.

Defendant's search has shown that "Underwriters at Lloyd's, London" is not a corporation, a limited liability company, a limited liability partnership, or a registered fictitious business name. "Underwriters at Lloyd's, London" also does not meet the statutory definition of a "Foreign Unincorporated Association," as defined in §622.02(1), Florida Statutes (2005). The only remaining conclusion is that "Underwriters at Lloyd's, London" is an unincorporated association.

Furthermore, under Florida law, the group "Underwriters at Lloyd's, London" does not have the legal capacity to sue, and must bring suit in the names of the members of the

association. "In the absence of a statute authorizing an unincorporated religious society or association to make contracts, or to sue and be sued in its common name, such a society or association has no legal existence, and it can neither contract nor sue or be sued in its own name." Hunt v. Adams, 149 So. 24, 25 (Fla. 1933). There is no such statute in Florida authorizing "Underwriters at Lloyd's, London" to sue in their own name.

Assuming that the appropriate parties to bring this lawsuit were the "Underwriters at Lloyd's, London," the real parties in interest would be the individual members of the unincorporated association, not the association itself. Although some business entities, such as corporations, have been granted citizenship status, "unincorporated associations remain mere collections of individuals." Navarro Savings Ass'n v. Lee, 446 U.S. 458, 461 (1980). The crucial test for determining diversity of citizenship is "the citizenship of the real parties to the controversy." Id.; United Steelworkers of Am., AFL-CIO v. R.H. Bouligny, Inc., 382 U.S. 145 (1965). An unincorporated association may not sue in its associational name when invoking diversity jurisdiction, absent a grant of statutory authority by the state. See Lowry v. Int'l Broth. of Boilermakers, Iron Shipbuilders and Helpers of Am., 259 F.2d 568, 573 (5th Cir. 1958). There is no such grant of authority under Florida law, and so the named Plaintiffs, "Underwriters at Lloyd's, London," do not have the capacity to sue in the association's name under Florida law. Johnson v. Meredith, 840 So.2d 315 (Fla. 3d DCA 2003)("Unlike some other jurisdictions that permit an unincorporated association to sue or be sued in its own name, Florida does not have such an enabling statute."). Therefore Plaintiffs lack the capacity to bring this action as an unincorporated association and must instead allege the identity and citizenship of each member. Carden, 494 U.S. 185.

6

### b. Citizenship of the members of the association.

An unincorporated association "is not a citizen in any particular state in its own right and the actual citizenship of its members is determinative." Xaros v. U.S. Fidelity & Guar. Co., 820 F.2d 1176, 1181 (11th Cir. 1987); Asociacion de Perjudicados por Inversiones Efectuadas en U.S.A. v. Citibank, 770 So.2d 1267, 1269 (Fla. 3d DCA 2000). The Supreme Court has rejected the idea that the "citizenship of less than all of the entity's members" should be considered. Carden, 494 U.S. at 195. In order to show complete diversity of citizenship, an unincorporated association must allege facts showing the citizenship of all of its members. Carden, 494 U.S. at 195-96; Hettenbaugh v. Airline Pilots Ass'n Int'l, 189 F.2d 319, 320 (5th Cir. 1951). As the party asserting federal diversity jurisdiction, Plaintiffs have the burden of alleging "facts showing the jurisdiction of the court… as to the residence or citizenship of its members." Int'l Assoc. of Machinists v. Eastern Airlines, Inc., 320 F.2d 451, 455 (5th Cir. 1963). Laborers Local 938, 827 F.2d at 1457. The citizenship of each and every member of an unincorporated association is the factor determinative in considering the diversity of the parties. Carden, 494 U.S. at 195-96; Laborers Local 938, 827 F.2d at 1457. Plaintiffs therefore should have alleged the citizenship of each and every member of the association. Carden, 494 U.S. at 195-96; Rolling Greens, 374 F.2d at 1022.

Assuming that "Underwriters at Lloyd's, London" was able to sue in the association's name, it would still be required to allege the citizenship of all the Names who subscribe to the Certificate involved in this policy, who are the real parties in interest, not the Underwriters who are acting as the agents of the Names. Indiana Gas Co., Inc. v. Home Ins. Co., 141 F.3d 314 (7th Cir. 1998), cert. denied 525 U.S 931 (1998)(holding that each

7

individual Name must be completely diverse).  See also MacKason v. Diamond Financial, LLC, 347 F.Supp.2d 53, 55 (Dist. Ct. S.D. N.Y. 1987)(ordering a defendant business organization, whose citizenship for diversity jurisdiction was determined by the citizenship of its members, to produce an affidavit listing all of its members and their citizenship); Lowsley-William b. North River Ins. Co., 884 F.Supp. 166 (U.S. Dist. Ct. N.J. 1995)(describing in detail the process of resinsurance at Lloyd's and the interrelationship of the participants).

## II.   This Action Should be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(7) for Failure to Join a Party Under Rule 19.

The First Amended Complaint should be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(7)("failure to join a party under Rule 19").  Plaintiffs have failed to join Michael Rockhill, Jr. and Michael Rockhill, Sr., ("the Rockhills").  The Rockhills are parties who are necessary and indispensable to the just consideration of this case as the real parties in interest.  Intertwined with this analysis is the fact that the Rockhills are the real parties in interest to this action, as they are the parties to the alleged contract.  Rule 17(a) states that "[e]very action shall be prosecuted in the name of the real party in interest."  Fed. R. Civ. P. 17(a).  However, their joinder as plaintiffs would remove this action from the jurisdiction of this Court, as all parties would no longer be diverse because Michael Rockhill, Jr. is a citizen of the state of Florida.

A dismissal under Fed. R. Civ. P. 12(b)(7) requires a two step analysis of the requirements set down in Rule 19.[1]  See, e.g., Haas v. Jefferson Nat'l Bank of Miami Beach,

---

[1] Federal Rule of Civil Procedure 19, Joinder of Persons Needed for Just Adjudication, provides, in part:

442 F.2d 394 (5th Cir. 1971); Shibata v. Lim, 133 F. Supp. 2d 1311, 1315-16 (U.S. Dist Ct. M.D. Fla. 2000). The first step is to determine if a party is necessary to the action, under Rule 19(a). The second step, under Rule 19(b), is to determine if, "in equity and good conscience," the court can continue the action with only the persons or entities already parties, or if the action should be dismissed because the absent party is "indispensable." Fed. R. Civ. P. 19(b).

### a. The Rockhills are "Persons to Be Joined if Feasible" Under Rule 19(a).

Pursuant to Fed. R. Civ. P. 19(a)(1), "complete relief cannot be accorded among those already parties," as the Rockhills are the real party in interest to this litigation. Fed. R. Civ.

---

(a) Persons to Be Joined if Feasible
A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reason of the claimed interest. …

(b) Determination by Court Whenever Joinder Not Feasible.
If a person as described in subdivision (a)(1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being this regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

P. 19(a)(1). They are parties to the alleged contract, and they are the named parties in the release. Additionally, the Rockhills are parties who should be joined under Fed. R. Civ. P. 19(a)(2), because they have "an interest relating to the subject of the action." Fed. R. Civ. P. 19(a)(2). The Plaintiffs in this action, whether in the count for specific performance, or in the count for declaratory relief, ask this Court to determine whether or not a contract was entered in to between Defendant and the Rockhills. The specific performance sought in Count I seeks to require Defendant to execute a document releasing the Rockhills from liability for the accident of May 7, 2002. The Rockhills clearly have an interest in the subject of this lawsuit, as they are parties to the alleged contract. The Rockhills are also "so situated that the disposition of the action in … [their] absence" will, under Rule 19(a)(2)(i), impede their ability to protect that interest. Fed. R. Civ. P. 19(a)(2). In fact, they are the real parties in interest to the issues of this suit pursuant to Rule 17(a), and should be named Plaintiffs. The Rockhills are parties who should be joined in this action, if such joinder is feasible.

### b. The "Determination by the Court Whenever Joinder Not Feasible" Under Rule 19(b).

Once this Court determines that there is a party, or parties, who should be joined if feasible, "the only further question arises when joinder is not possible and the court must decide whether to dismiss or to proceed without him." Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 118 (1968). The Rockhills are parties who should be joined, if feasible. Joinder is not possible, because Michael Rockhill, Jr. is a citizen of the same state as Carol Osting Schwinn, so if the Rockhills were joined in this action then complete diversity would not be present.

Subsection (b) of Fed. R. Civ. P. 19 sets out four factors that a court must consider when determining whether or not, "in equity and good conscience," it should dismiss the action. These factors are

> first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Fed. R. Civ. P. 19(b). The consideration of these factors must be done in light of the facts of each case. "The decision whether to dismiss (i.e., the decision whether the person missing is 'indispensable') must be based on factors varying with the different cases, some such factors being substantive, some procedural, some compelling by themselves, and some subject to balancing against opposing interests." Provident Tradesmens, 390 U.S. at 118-19. A balanced consideration of all of these factors shows that the continuation of this action in the absence of the Rockhills will not be in the interest of justice or judicial economy, and that the pending state court negligence action provides a more than adequate remedy for all interested parties.

### i. The First Rule 19(b) Factor

The first Rule 19(b) consideration is "to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties." Fed. R. Civ. P. 19(b). "Essentially, this analysis mandates that the court determine the probability of a subsequent litigation that might produce inconsistent obligations." Casualty Indemnity Exch. v. High Croft Enters., Inc., 714 F.Supp. 1190, 1192 (U.S. Dist. Ct. S.D. Fla. 1989). A judgment rendered without the presence of the Rockhills has great potential to be highly

prejudicial to them and to Carol Osting Schwinn. The Rockhills, and not Underwriters at Lloyd's, London, are the parties named in the release which Underwriters now seek to require Carol Osting Schwinn to execute. If the Rockhills are not made parties to this action, and any counterclaims which may be brought, their arguments will not be heard by this Court.

### ii.  The Second Rule 19(b) Factor

The second Rule 19(b) factor is "the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided." Fed. R. Civ. P. 19(b). The relief sought before this Court cannot be constructed so that there are any protective provisions in the judgment. The relief sought is simple, and is not complex. While there are two counts to the Complaint, each count seeks essentially the same result – a judicial determination that a contract was formed between the Rockhills and Carol Osting Schwinn to settle the personal injury claims arising out of the collision, which are currently the subject of the pending state court litigation. Therefore there is no way that the relief sought can be narrowed or carefully rendered so that it would not impinge on the issues pending in the state court action.

### iii.  The Third Rule 19(b) Factor

The analysis of the third Rule 19(b) factor, "whether a judgment rendered in the person's absence will be adequate," shows that this action should be dismissed. Fed. R. Civ. P. 19(b). The Rockhills are the parties who would be released if the alleged contract had been formed, and are the parties who would be bound by the outcome of any counterclaims, and they have the legal right to be heard on this matter. Additionally, where there are other

parties who may be liable, this court is not in a position to decide all issues of liability arising out of the subject incident. This circumstance "would lead to gross judicial inefficiency, an inefficiency that is unnecessary because the plaintiff has another remedy." High Croft, 714 F.Supp. at 1192.

### iv. The Fourth Rule 19(b) Factor

The fourth factor, "whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder," also shows that this action should be dismissed. Fed. R. Civ. P. 19(b). A declaratory action can be brought in state court, or an affirmative defense can be raised in the pending state litigation. See High Croft, 714 F.Supp. at 1192.

### c. This Action Should Be Dismissed Under Fed. R. Civ. P. 12(b)(7) for Failure to Join a Party Under Rule 19

The Rockhills are parties who should be joined under Rule 19(a). However, as at least Michael Rockhill, Jr. is a citizen of the state of Florida, they cannot be joined without destroying complete diversity and this Court's jurisdiction. This Court should not proceed without the Rockhills because they are indispensable parties under Fed. R. Civ. P. Rule 19(b), and this action should be dismissed.

In Liberty Mutual Ins. Co. v. Lee, 117 F.2d 735 (5th Cir. 1941), an insurance company attempted to bring a federal action seeking a declaration that a release barred claims brought in state court. A truck owned by Kinsman's, Incorporated struck and killed a child. Id. at 736. The parents of the child brought suit in state court for damages. However, a representative of Liberty Mutual, who held the insurance policy which covered the loss, had previously obtained a release signed by the parents for an amount significantly less than the

13

policy limits. Id. The Firth Circuit, in affirming the trial court's dismissal of the federal action, stated that

> A right decree was rendered, but it ought to be rested not on the invalidity of the release, but on the impropriety of thus trying its validity at the instance of the Insurance Company. The claim made by the parents was against Kinsman's, Incorporated, and not against the Insurance Company. Their controversy is one between citizens of the same State and triable in the State court. The insurer, because of his contract with the truck owner, has an interest in the outcome of the controversy, but he cannot take charge of it as his own and carry it into a federal court because of his citizenship being diverse. **The validity of the release which runs to Kinsman's, Incorporated, ought not to be, and cannot be, adjudicated at the suit of the Insurance Company.** The Insurance Company's proper course is to defend the suit in the State court according to its policy contract. It has not a justiciable controversy with the Lees which would support a federal declaratory judgment.

Id. (Emphasis added). The named insureds, to whom the release would run, should be joined as parties to an action which would determine the status of that release. Here, the release would benefit the Rockhills, and they are therefore necessary and indispensable parties to this action. Without their presence, the case should be dismissed.

### III. The Court Should Decline to Exercise its Discretion to Issue a Declaratory Judgment and Should Dismiss Count II

A federal court has discretion to dismiss a request for declaratory judgment when there is a pending state-court action raising the same controversy. Brillhart v. Excess Ins. Co. of America, 316 U.S. 491 (1942); Ameritas Variable Life Ins. Co. v. Roach, 411 F.3d 1328 (11th Cir. 2005); General Star Indemnity Co. v. Puckit, 818 F.Supp. 1526 (M.D. Fla. 1993). Even when a federal district court may have jurisdiction of a suit under the Federal Declaratory Judgment Act, 28 U.S.C.A. § 2201, it is under no compulsion to exercise that jurisdiction. Brillhart, 316 U.S. at 494. District courts have discretion in determining

14

whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies the prerequisites of subject matter jurisdiction. Wilton v. Seven Falls Co., 515 U.S. 277, 282 (1995). The remedial and equitable nature of a declaratory judgment vests the court with a broader discretion than is otherwise available under the federal abstention doctrine. Puckit, 818 F.Supp. at 1530; see also Wilton, 515 U.S. at 287 (noting "the unique breadth of this discretion to decline to enter a declaratory judgment …").

Since Defendant filed her Motion to Dismiss [Dkt. 5], directed at the original Complaint in this action, the Rockhills withdrew the affirmative defense of settlement in the state court negligence action. See Exhibits C and D.[2] Although the issues pending before each court therefore are not identical at present, the question of whether or not a settlement contract was reached is a dispute between the parties who are involved in the state court action, and its resolution is potentially determinative of the state court action. The issues of settlement and liability should be decided in the same action.

This case presents the type of situation contemplated by Brillhart in which it would be an appropriate exercise of the Court's discretion to grant a dismissal. The primary inquiry under Brillhart is "whether the claims of 'all parties in interest can be satisfactorily be

---

[2] Contrary to the assertions of the Plaintiffs in their Response to Defendant's first Motion to Dismiss, [Dkt. 5], this affirmative defense was not withdrawn in response to Carol Osting Schwinn's Motion to Strike, which she filed on August 30, 2005, attached hereto as Exhibit F, but was a response to her Motion to Dismiss in this instant action. The Motion to Dismiss was filed with this Court on September 23, 2005, and the affirmative defense was withdrawn on September 29, 2005. See Exhibit C.

adjudicated' in the state court proceeding." Puckit, 818 F.Supp. at 1531, *quoting* Brillhart, 316 U.S. at 495. Even though the affirmative defense of an alleged settlement is not currently pending in the state court negligence case, the issue can be satisfactorily resolved in that state court case. See, e.g., Cheverie v. Geisser, 783 So.2d 1115, 1119 (Fla. 4th DCA 2001).

The Eleventh Circuit has enumerated "factors for consideration to aid district courts in balancing state and federal interests," while providing a warning that "[o]ur list is neither absolute nor is any one factor controlling; these are merely guideposts in furtherance of the Supreme Court's admonitions in Brillhart and Wilton." Roach, 411 F.3d at 1331. These factors are

> (1) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts;
> (2) whether the judgment in the federal declaratory action would settle the controversy;
> (3) whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue;
> (4) whether the declaratory remedy is being used merely for the purpose of "procedural fencing"--that is, to provide an arena for a race for res judicata or to achieve a federal hearing in a case otherwise not removable;
> (5) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction;
> (6) whether there is an alternative remedy that is better or more effective;
> (7) whether the underlying factual issues are important to an informed resolution of the case;
> (8) whether the state trial court is in a better position to evaluate those factual issues than is the federal court;  and
> (9) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

Id. Most, if not all, of these factors show that this Court should decline to exercise its discretion to issue a declaratory judgment in this action, and Count II should be dismissed.

Each of these nine factors from <u>Roach</u> shows that this declaratory action should be dismissed. (1) The issues raised in the declaratory action are all issues of state law, and the State of Florida has just as much of an interest in those issues as does the federal court. (2) A judgment in this federal declaratory action will not completely settle the controversy because the Rockhills have raised issues of liability in the pending state court action which should be heard. (3) The federal declaratory action cannot serve any more of a useful purpose in clarifying the legal relations at stake in this entire dispute than can the state courts. Ultimately, the present federal action would not resolve all issues between the real parties in interest. (4) Here, the declaratory remedy is being used merely for the purpose of "procedural fencing" in an attempt to accomplish a removal that would otherwise not be possible. (5) The fifth factor, whether the declaratory action would increase the friction between the federal and state courts and improperly encroach on state jurisdiction, does not lean either towards or against dismissal. (6) There is an alternative remedy, the pending state court negligence action, that would be more effective at resolving all issues at stake. (7) Related to the reason that the alternative remedy is more desirable, here, the underlying factual issues are important to an informed resolution of the case, and those issues will be heard by the state court. (8) The state trial court is in at least as good of a position to evaluate those factual issues as is the federal court. (9) There is nothing in the federal common law which dictates a resolution of the legal issues presented. The resolution of these issues, the determination of the existence of a contract, necessarily implicates state law. Additionally, the state remedy is substantially the same as the remedy sought in federal court,

therefore, this Court may decline to issue declaratory relief. See Cincinnati Ins. Co. v. Holbrook, 867 F.2d 1330, 1333 (11th Cir. 1989).

### IV.  This Action Should Be Dismissed Because it is an Inappropriate Attempt at Forum Shopping

Another reason why the Court should dismiss the action is to discourage Plaintiffs' attempt at forum shopping. See Puckit, 828 F.Supp. at 1532 – 33; Casualty Indem. Exchange v. High Croft Enterprises, Inc., 714 F.Supp. 1190, 1193 (S.D. Fla. 1989). Plaintiffs' filing of this action is a type of forum shopping that is referred to as "procedural fencing," which occurs when a party files a declaratory action to accomplish something it could not do through removal. In this case, Plaintiffs cannot remove the negligence proceeding to this Court because there would not be complete diversity between the parties. The Defendant in this action, Carol Osting Schwinn, is the plaintiff in the state negligence action, whereas the Rockhills, who are not joined in this action, and the defendants in the state court case. Michael Rockhill, Jr. is a citizen of the state of Florida, as is Carol Osting Schwinn. There is not perfect diversity of citizenship in the negligence action and therefore it cannot be removed to federal court. See Wisconsin Dep't of Corrections v. Schacht, 524 U.S. 381, 388 (1998). Therefore, Plaintiffs' bringing of this declaratory action to adjudicate the same issue that was pending in the state court negligence case is a transparent attempt at "back door removal" that constitutes procedural fencing. See High Croft Enterprises, 714 F.Supp. at 1193 (holding, "When a party files a declaratory judgment action for purposes of 'procedural fencing,' a court should exercise its discretion and dismiss the case.").

### V.  If Count I of this Action is not Dismissed under Fed. R. Civ. P. 12(b)(7), Then Count I Should Be Stayed Pending the Resolution of the State Court Action

18

If this Court declines to dismiss Count I of this action under Fed. R. Civ. P. 12(b)(7), Defendant requests that Count I be stayed pending the resolution of the state court litigation. The factual circumstances of this action are very similar to those in Great Lakes Dredge and Dock Co. v. Ebanks, 870 F. Supp. 1112 (U.S. Dist. Ct. S.D. Ga. 1994). In Ebanks, a seaman was injured while on the job. Id. at 1114. Ebanks, the injured seaman, without the assistance of an attorney, began to negotiate a settlement for his injuries with the employer, Great Lakes Dredge and Dock. Id. When Ebanks hired an attorney, that attorney communicated to Great Lakes Dredge and Dock that the settlement offer was rejected. Id. Almost immediately after that rejection, Great Lakes filed a federal action for specific performance of the settlement agreement and for declaratory relief. Id. Three weeks later, Ebanks filed a complaint in a Florida state court against Great Lakes, seeking damages for his injuries.

In the federal action, Ebanks filed a motion to dismiss the count for declaratory relief and to stay the count seeking specific enforcement of the alleged settlement agreement, based on the pendency of the state court action. The United States District Court for the Southern District of Georgia granted the motion in both respects. It dismissed the count for declaratory relief based on the Brillhart doctrine. Id. at 1117 - 19. In considering the request to stay the count for specific performance, the court stated that it "cannot order specific performance of a settlement agreement without first declaring that an enforceable settlement agreement indeed exists. Thus, it is rather disingenuous to suggest that the Court must treat … [a plaintiff's] claim for specific performance as completely separate from its claim for declaratory relief." Id.. The specific performance count was stayed, as it should be in this action if it is not dismissed.

WHEREFORE, Defendant, CAROL OSTING SCHWINN, respectfully requests that this Honorable Court dismiss Counts I and II of the First Amended Complaint with prejudice, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(7), and as improper attempts at forum shopping, and that Count II also be dismissed in an exercise of this Court's discretion under the Federal Declaratory Act, or, in the alternative, that Count I be stayed pending the resolution of the state court negligence action.

## CERTIFICATE OF SERVICE

I hereby certify that on November 1, 2005, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to: **William Stewart Berk, Esquire** and **Melissa McMillan Sims, Esquire**, Adorno & Yoss, LLP, 2525 Ponce De Leon Blvd., Suite 400, Miami, Fl, 33134-6012.

/s Kathryn Lee
DALE SWOPE
Florida Bar No. 261270
DaleS@swopelaw.com
KATHRYN LEE
Florida Bar No. 0675660
KathrynL@swopelaw.com
SWOPE, RODANTE P.A.
1234 E. 5th Ave.
Tampa, Fl 33605
(813) 273-0017
(813) 223-3678 (f)
Counsel for Carol Osting Schwinn