UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNDERWRITERS AT LLOYD'S LONDON,

    Plaintiffs,

vs.                                                  Case No.:  8:05-cv1460-T-17TGW

CAROL OSTING-SCHWINN, as parent and
legal guardian of C.O., a minor

    Defendant.
_____/

## ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S COUNTER MOTION FOR SUMMARY JUDGMENT

This cause comes before this Court on an Amended Motion for Summary Judgment filed by Plaintiff, Underwriters at Lloyd's London (Underwriters), (Dkt. 97), filed on January 22, 2007, a Motion for Summary judgment filed by Defendant, Carol Osting, as parent and legal guardian of C.O., a minor (Osting), (Dkt. 87), filed on January 19, 2007, and Defendant's Motion for Attorney's Fees and Costs, Dkt. 73).  For the reasons set forth below, the Plaintiff's Amended Motion for Summary Judgment is **Denied**, and the Defendant's Motion for Summary Judgment is **Denied**.  The following facts are taken as true for the purpose of resolving the pending motions.

## BACKGROUND

On May 11, 2002, Defendant minor, C.O, was involved in an accident with Michael Rockhill, Jr.  This accident occurred on the property of Michael Rockhill, Sr. (Rockhill) who is the insured.  C.O, who is represented by his mother Carol Osting-Schwinn, obtained Counsel, and on March 1, 2004, a letter was sent to Markel International Insurance Company, a.k.a Terra

Nova Insurance Company, Ltd., (Markel) requesting the information provided for in Florida Statute § 627.4137 (2006)[1]. On August 17, 2004, Markel sent Defendant's Counsel the information it had on the insurance policy for Michael Rockhill, Sr.; however, the policy coverage ended February 13, 2002, which was before the accident occurred. On September 13, 2004, Defendant's Counsel sent a letter to Jan O'Rourke, (O'Rourke) who was the president of American Shield[2], stating that they have been trying to contact Markel regarding the insurance claim, but asking if American Shield could settle the claim for policy limits, and send the information required by Florida Statute § 627.4137. Finally on September 30, 2004, Defendant's Counsel was informed that the policy through Markel did not cover the accident occurring on May 11, 2002.

On October 12, 2004, William Berk (Berk), counsel for the Plaintiff contacted Defendant's Counsel about the claim presented on behalf of C.O. Berk asked to be provided with a detailed demand package, and ninety (90) days to evaluate the claim. At this time, Berk provided some of the basic information asked for previously by Defendant's Counsel[3]. On

---

[1] Florida Statute § 627.4137 states:
    (1) Each insurer which does or may provide liability insurance coverage to pay all or a portion of any claim which might be made shall provide, within 30 days of the written request of the claimant, a statement, under oath, of a corporate officer or the insurer's claims manager or superintendent setting forth the following information with regard to each known policy of insurance, including excess or umbrella insurance:
        (a) The name of the insurer.
        (b) The name of each insured.
        (c) The limits of the liability coverage.
        (d) A statement of any policy or coverage defenses which such insurer reasonably believes is available to such insurer at the time of filing such statement.
        (e) A copy of the policy
In addition, the insured, or his or her insurance agent, upon written request of the claimant or the claimant's attorney, shall disclose the name and coverage of each known insurer to the claimant and shall forward such request for information as required by this section to all affected insurers. The insurer shall then the information required in this section to the claimant within 30 days of receipt of such request.

[2] American Shield had a binding authority agreement with Underwriters at Lloyd's London to act as a 'cover agent' on behalf of certain syndicates who subscribe to the binding authority for the particular time period. (Dkt. 104).

[3] This information included the following: The insurer was Underwriters at Lloyd's London, Michael Rockhill, Sr. was the insured, and liability coverage included $100,000.00 and $1000.00 for medical payments.

2

November 4, 2004, Berk sent Defendant's Counsel a letter with possible defenses, and enclosed a certified and true copy of Rockhill's insurance policy[4]. On February 1, 2004, Berk sent a letter to Defendant's Counsel stating that Underwriters was prepared to settle at the policy limits. On May 12, 2005, Defendant's Counsel sent a letter to Berk confirming the settlement offer, and asking for any documentation that would be needed for the settlement of the claim. The letter also stated that compliance with Florida Statute § 627.4137 would be required for any settlement. On May 19, 2005, Berk sent another letter containing the General Release Forms Defendant would be required to sign for settlement. In response, on May 26, 2005, Defendant's Counsel sent a letter to Berk stating that revisions were made to the General Release Form; the settlement would have to include property damage, and cost for the guardianship; and full compliance with the statute was still not obtained. Specifically, the actual insurers were not identified, and the policy that was sent was not certified. On May 31, 2005, Berk sent a letter to Defendant's Counsel stating that they agreed to the terms of Defendant's settlement offer as put forth in the May 26, 2005, settlement offer, and said a declaration under oath from Duncan Smith[5] setting forth information required by the Florida Statute § 627.4137 would be forthcoming. Enclosed with the letter were the settlement checks, and an affidavit from Keith Utermark[6] verifying the insurance policy for Rockhill. On June 1, 2005, Berk sent a letter to the Defendant's Counsel with the declaration from Duncan Smith enclosed.

On June 23, 2005, Defendant's Counsel said they still had not received full compliance with Florida Statute § 627.4137 because they had not received clear information regarding who exactly the carrier was, or firm proof of the extent of the coverage. On June 24, 2005, Berk sent

---

[4] This enclosed copy did not contain an affidavit verifying that it was a certified true copy.
[5] Duncan Smith was employed by XL London Market Limited, and had an agreement directly with the specific syndicates of Underwriters of Lloyd's London who assume the risk for Rockhill's insurance policy. The agreement gave Duncan Smith Authority to settle claims set out in the agreement. Duncan Smith signed this agreement as a claims manager professional. (Dkt. 104)
[6] Keith Utermark was the current president of the American Shield insurance group. (Dkt. 105).

3

a letter to Defendant's Counsel trying to clarify how the London insurance market works, and how the affidavit and declaration were relevant to fulfilling the requirements of the Florida Statute § 627.4137.  On July 19, 2005, Defendant's Counsel sent a letter to Berk stating the declaration from Duncan Smith was not sufficient because it did not sufficiently identify how he was related to the Syndicates from Underwriters, and that the Plaintiffs did not fully comply because they did not provide a statement from the insured which was also required by the statute.  Enclosed were the checks for settlement for return and a copy of the lawsuit.  On July 20, 2005, Berk sent a letter to the Defendant's Counsel stating that they have never asked for a statement from the insured and the parties already had a binding settlement agreement.  On July 26, 2005, Berk sent a letter enclosed with a letter from the insured's agent Deborah Newman.  Berk stated that even though it was not required by the settlement offer the plaintiff was still providing the statement from the insured's agent.  On July 28, 2005, Defendant's Counsel sent Berk a letter stating that the insured's statement was required by the statute, and the names of the insurers were never actually given because the information was given as syndicate numbers.  On August 3, 2005, Berk sent a letter asking Defendant's Counsel to comply with the terms of the settlement agreement, by sending back the releases.  On August 13, 2005, Defendant's Counsel sent Berk a letter stating the terms of the agreement were not complied with, and they viewed the August 3rd letter as a new offer that they rejected.

## STANDARD OF REVIEW

Summary Judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issues as to any material fact and that the moving part is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party bears the burden of proving that no genuine issue of material

4

fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-324 (1986). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is no genuine issue of material fact if "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party…" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The evidence presented must be construed in favor of the nonmoving party, and that party must receive the benefit of all favorable inferences that can be drawn from that party's evidence. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The Court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. *Liberty Lobby*, 477 U.S. at 249.

## DISCUSSION

In Florida, settlement agreements are governed by the law of contracts. *Robbie v. City of Miami*, 469 So.2d 1384, 1385 (Fla. 1985). Florida law favors settlement agreements; however, there must be mutual agreement to the material terms of the settlement. *Cheverie v. Geisser*, 783 So.2d 1115, 1119 (Fla. 4th DCA 2001) (citing *Robbie*, 469 So.2d at 1385). A contract must contain an offer, acceptance and consideration in order to form a valid contract. In this case, it is undisputed that there was an offer and consideration. The letter dated May 26, 2005, sent by Defendant's Counsel to Berk constituted an offer. The Defendant would execute a release and agree not to bring further proceedings, in exchange for the policy limits on Rockhill, Sr.'s insurance policy. The only element that is in dispute in this case is whether there was acceptance of the settlement agreement.

Generally acceptance of an offer must be "absolute and unconditional, identical with the terms of the offer, and in the mode, at the place, and within the time expressly or impliedly

5

stated within the offer." *Id.* In the offer there were multiple requirements necessary for there to be an acceptance of the settlement offer. Defendant's Counsel stated that he would have the Defendant execute the releases provided a check representing the full benefits available under the policy was sent, and there was full compliance with Florida Statute § 627.4137 within twenty (20) days. This twenty (20) day limit would have given the plaintiffs until June 15, 2005, to comply with the requirements for acceptance, and, thus, form a valid settlement agreement. Florida Statute § 627.4137 requires a few things: first a statement from the insurer by a corporate officer or insurer's claim manager setting forth certain information regarding the insurance policy, and a statement from the insured, or his insurance agent, disclosing the name and coverage of each known insurer. While the statute allows thirty (30) days for the disclosure of this information, the terms of the offer specified that this information should have been disclosed within twenty (20) days.

Plaintiff contends that they complied with all the terms of the offer. They sent the checks for the policy limits with a letter from Berk dated May 31, 2005. Also enclosed with this letter was a copy of the insurance policy with an affidavit from Keith Utermark stating it was a true and correct copy of the policy. Then on June 1, 2005, Berk sent a letter to Defendant's Counsel with a declaration under oath by Duncan Smith providing the information required under Florida Statute § 627.4137. Thus, the Plaintiff contends that they fully performed their end of the settlement agreement on June 1, 2005. The Plaintiff asserts that the Defendant never explicitly requested a statement from the assured previously, and it was not a requirement for acceptance of the agreement. However, the Plaintiff did provide this statement from both the insured and his agent, but it was after the time period proscribed for compliance. The Plaintiff also asserts

that the request of the insured's statement should have been made to the insured and not to the insurer.

Defendant asserts that the Plaintiff did not comply with all the terms of the offer. The Defendant asserts that, in order to achieve "full compliance" with the statute, the Plaintiff would have had to provide a statement from the insured or the insured's agent, and this was not done in the time period proscribed in the offer. The Defendant asserts that in a letter dated June 23, 2005, they gave the plaintiff an extension of fourteen (14) days in order to comply with the statute, and the Plaintiff still did not forward the requested information. Defendant also asserts that the Plaintiff did not provide a sworn statement of a claims manager or officer of the insured, and the policy certified by Keith Utermark did not comply with the requirements of the statute.

The first question for this case is whether the insurers were required to get a statement from the insured in order to fully comply with Florida Statute § 627.4137. Defendant relies on *Schlosser* for the proposition that the Defendant did not have to send the request for the insured's statement directly to the insured. *Schlosser v. Perez*, So.2d 179 (Fla. 2d DCA 2002). In *Schlosser*, the claimant's attorney sent a request to the claims representative for Vision Insurance Group, which is the managing general agent for Modern Service Insurance Company, Perez' insurer. *Id.* at 180. The request specified that claimant wanted all the information required by Florida Statute § 627.4137. *Id.* The insurer failed to provide the statement of the insured or his insurance agent disclosing the name and coverage of each known insurer. *Id.* at 181. The court held that because there was failure to provide the statement his acceptance was not identical to the essential terms of the offer. *Id.* at 183.

The insurance system utilized by Underwriters is different then the American system. Underwriters is comprised of syndicates who undertake the risk for insurance policies, and

7

Underwriters and the syndicate members have a binding agreement for this. (Dkt. 104). In this case specifically, syndicate 861, 588, and 1209 were identified as those responsible for the risk of the insurance policy. American Shield was the cover agent for Underwriters whom generated the insurance policy, and they had a binding agreement with Underwriters to do this. Deborah Newman was an insurance agent who would solicit customers for American Shield, and she would send the policy information to American Shield for approval. (Dkt. 105).

This case is different from *Schlosser*, where the request was given to the insurer who was the insurance agent, because here the insurer and the insurance agent are two separate entities. It is a question for the fact finder to determine whether the demand for full compliance included the requirement for the insurer to procure from the insured the relevant statement, or whether the Defendant had to request this information from the insured or his agent[7] specifically.

The second question for this case is whether Duncan Smith qualified as a claim's manager for Underwriters. The Plaintiff had Duncan Smith send a declaration of oath with the relevant insurance information. Florida Statute § 627.4137 requires that a corporate officer, claims manager, or superintendent of the insured provide this information. Duncan Smith worked for XL London Market, Ltd., but the declaration did not specify on its face that he was employed by Underwriters. However, the declaration did state that Duncan Smith was executing the disclosure on behalf of syndicates 861, 588, and 1209. These same syndicate numbers can be found on the other information that was previously forwarded to Defendant's Counsel. Thus the declaration of Duncan Smith is sufficient to satisfy the requirement under Florida Statute § 627.4137 because he was the insurer's claims manager for the particular syndicates mentioned.

---

[7] In this case the insurance agent for Rockhill, Sr. would have been Deborah Newman. (Dkt. 105).

Finally, Florida Statute § 627.4137 requires that the corporate officer, claims manager, or superintendent of the insured provide a copy of the policy.  In this case the Plaintiff sent the copy of the policy through its Counsel, and had an attached affidavit from the president of American Shield certifying it was a true and correct copy.  Keith Utermark is neither a corporate officer, claims manager, nor superintendent of the insured.  Duncan Smith's declaration specified that a copy of the policy was provided to Berk, and, if the Defendant's Counsel requested, another copy could be made available.   Defendant's Counsel informed Berk that the affidavit by Keith Utermark did not show his connection to Underwriters, and requested that Berk send over an affidavit from a corporate officer or claims manager of the insured certifying that the insurance policy was correct.  Berk tried to explain how Keith Utermark was connected, but failed to provide a sworn statement.  It is a question for the fact finder to determine whether the affidavit from the president of American Shield was sufficient to satisfy the requirements of the statute, and, thus, create and enforceable settlement agreement.

## **CONCLUSION**

It is clear, having read the pleadings, depositions, answers to interrogatories, and affidavits that the Plaintiff and Defendant have both raised genuine issues of material fact as to the claim of acceptance of the settlement agreement.  Accordingly, it is:

**ORDERED** that Plaintiff's amended motion for summary judgment, (Dkt. 97), against Defendant be **Denied**, and Defendant's counter-motion for summary judgment, (Dkt. 87), against Plaintiff be **Denied**. Additionally, the Court finds the motion for attorney's fees and costs, (Dkt. 73), to be moot due to denial of Motion for Summary Judgment.

**DONE AND ORDERED** in Chambers in Tampa, Florida, this 14th day of June 2007.



ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to:  All parties and counsel of record