UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DORNOCH LTD.,
in its individual capacity,

      Plaintiff,

v.                                          Case No.: 8:05-CV-1460-T-17-TGW

CODY OSTING and
CAROL OSTING-SCHWINN

      Defendants.
_____/

## ORDER ON DEFENDANTS' MOTION TO DISMISS

This cause is before the Court on Defendants Cody Osting and Carol Osting-Schwinn's

Motion to Dismiss (Doc. 211) and Plaintiff Dornoch Ltd.'s response thereto. (Doc. 216). For the

reasons set forth below, Defendants' Motion to Dismiss is **DENIED**.

## BACKGROUND AND PROCEDURAL HISTORY

The current dispute arises over the enforcement of an alleged settlement agreement

between Plaintiff and Defendants intended to settle a negligence claim Defendants brought forth

against Plaintiff's insured, Michael Rockhill ("Rockhill"), in a separate state court action arising

from an accident occurring on May 7, 2002. This case was initially commenced in this Court on

August 5, 2005 by the various underwriting syndicates (the "Underwriters") that shared the risk

on Rockhill's Lloyd's of London insurance policy (the "Policy"). The Underwriters alleged that

1

Defendants set forth a settlement offer on May 26, 2005 and the Underwriters accepted the offer on May 31, 2005. The Underwriters contended that Defendants then breached the settlement agreement by refusing to provide a general release to the Underwriters for all claims against their insured Rockhill. Thus, the Underwriters sought a declaratory judgment in this Court as to whether the settlement agreement was enforceable and precluded the negligence suit brought by Defendants against Rockhill in state court.

This Court granted the Underwriters' motion for summary judgment on April 23, 2008. (Doc. 168). Upon appeal, the Eleventh Circuit vacated this Court's grant of summary judgment, holding that the Underwriters failed to establish complete diversity jurisdiction because they failed to plead the citizenship of each member Name composing the syndicates backing Rockhill's policy. *Underwriters at Lloyd's v. Osting-Schwinn*, 613 F.3d 1079, 1092-1093 (11th Cir. 2010). The Eleventh Circuit remanded the case to this Court so that the Underwriters could "[be afforded] a further opportunity to revise their complaint to establish complete diversity of citizenship." *Id.* at 1093. The Eleventh Circuit noted that the Underwriters' complaint singled out Dornoch Ltd., the present Plaintiff, as the "lead underwriter" on the policy. *Id.* at 1092. However, because the pleading was "wholly ambiguous as to the role of Dornoch . . . [complete diversity could not be established] on the basis of Dornoch's individual citizenship." *Id.* The Eleventh Circuit concluded by stating complete diversity of citizenship could only be established by either (1) disclosing the citizenship of each individual Name on the Policy or (2) amending the complaint to establish that Dornoch Ltd. is bringing the claim in its individual capacity. *Id.*

Plaintiff, Dornoch Ltd., subsequently filed a Third Amended Complaint in this Court making clear it was proceeding in "its individual capacity" in an attempt to cure the jurisdictional

defect of the previous Underwriters' complaint. (Doc. 204). Defendants then filed the present

Motion to Dismiss for lack of subject matter jurisdiction currently before this Court. (Doc. 211).

## **STANDARD OF REVIEW**

The Federal Rules of Civil Procedure permit a party to make a motion to dismiss for lack

of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). Challenges to subject matter

jurisdiction under Rule 12(b)(1) come in two forms: facial and factual challenges. *Lawrence v.*

*Dunbar,* 919 F.2d 1525, 1528-29 (11th Cir. 1990). Facial challenges are limited to the four

corners of the complaint while factual challenges permit investigation of matters outside the

pleadings themselves. *Garcia v. Copenhaver, Bell, and Assocs.,* 104 F.3d 1256, 1260-61 (11th

Cir. 1997). "Facial attacks on the complaint [require] the court merely to look and see if [the]

plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his

complaint are taken as true for the purposes of the motion." *Lawrence,* 919 F.2d at 1529

(internal quotations omitted). A facial attack affords a plaintiff safeguards similar to those

provided in a Rule 12(b)(6) motion. *Id.* If the jurisdictional allegations in the complaint are

sufficient, the complaint stands. *Paterson v. Weinberger,* 644 F.2d 521, 523 (5th Cir. 1981).

Factual attacks, on the other hand, challenge the existence of subject matter jurisdiction in fact,

irrespective of the pleadings. Therefore, "no presumptive truthfulness attaches to plaintiff's

allegations, and the existence of disputed material facts will not preclude the trial court from

evaluating for itself the merits of jurisdictional claims." *Lawrence,* 919 F.2d at 1529 (internal

quotations omitted).

3

## DISCUSSION

In order to establish federal diversity jurisdiction, the amount in controversy must exceed

"the sum or value of $ 75,000, exclusive of interests and costs," 28 U.S.C. § 1332(a), and all

parties to the action must be completely diverse.  *Palmer v. Hosp. Auth. of Randolph County*, 22

F.3d 1559, 1564 (11th Cir. 1994).  As amended the complaint establishes satisfactorily that the

parties are diverse in citizenship,[1] but Defendants argue in their Motion to Dismiss that both

facially and factually Plaintiff failed to establish the requisite amount in controversy.  (Doc.

211).

"[W]here jurisdiction is based on a claim for indeterminate damages . . . the party seeking

to invoke federal jurisdiction bears the burden of proving by a preponderance of the evidence

that the claim on which it is basing jurisdiction meets the jurisdictional minimum."  *Federated*

*Mutual Insurance Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003).  This

"preponderance-of-the-evidence standard" applies to an insurer that brings a declaratory

judgment action in federal court, "given that a declaratory judgment plaintiff does not seek

damages at all and thus does not seek a determinate amount of damages."  *Sua Insurance Co. v.*

*Classic Home Builders, LLC*, 751 F. Supp. 2d 1245, 1248 (S.D. Ala. 2010) (citing *McKinnon*

*Motors*, 329 F.3d at 807, n. 1).  "When a plaintiff seeks injunctive or declaratory relief, the

amount in controversy is the *monetary value of the object of the litigation* from the plaintiff's

perspective."[2]  *McKinnon Motors*, 329 F.3d at 807 (emphasis added).  Stated differently, "'the

---

[1] Plaintiff, Dornoch Ltd, is a company incorporated under the laws of the United Kingdom and has its principal place of business in England.  (Doc. 204).  Both Defendants are citizens of Florida.  (Doc. 204).

[2] Plaintiff's complaint attempts to allege that the amount in controversy "as demanded by Defendants is at least $1,000,000 and . . . [Plaintiff's] pro rata portion amounts to at least $510,035.00." (Doc. 204).  However, it is clear that this figure is derived from the $1,000,000 negligence claim asserted by Defendants *against Plaintiff's insured* in the separate state court action.  Therefore, the $1,000,000 figure does not establish the "monetary value of the object

4

value of the requested injunctive [or declaratory] relief is the monetary value of the benefit that would flow to the plaintiff if the injunction [or declaratory relief] were granted.'" *Sua Insurance Co.,* 751 F. Supp. 2d at 1251 (quoting *Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1077 (11th Cir. 2000)).

In determining the jurisdictional amount in controversy, it is appropriate to consider not only an insurer's potential liability pursuant to the face value of the policy but also the "pecuniary value of the obligation to defend the separate lawsuit." *Stonewall Insurance Co. v. Lopez,* 544 F.2d 198, 199 (5th Cir. 1976). An insurer is liable to its policyholder not only for the face value of the policy but also for the cost of providing a defense to its insured.[3]  Plaintiff's complaint requests for this Court to declare that the settlement agreement between the parties is enforceable and bars any action by Defendants against Plaintiff's insured arising out of the May 7, 2002 incident. A favorable judgment in this Court for Plaintiff enforcing the settlement agreement would allow Plaintiff to avoid its share of litigation costs in the separate state court lawsuit against Plaintiff's insured. Therefore, the avoidance of the costs to Plaintiff presented by the separate state court action is appropriately considered when determining the value of the object of the litigation in this Court from Plaintiff's perspective. *See Farmers Ins. Co. v. McClain,* 603 F.2d 821, 823 (10th Cir. 1979) (recognizing that the total obligation of an insurer for establishing the amount in controversy requirement exceeded policy limits and included "all expenses

---

of the litigation" from Plaintiff's perspective. Instead, the value of the litigation to Plaintiff is represented by its pro rata share of potential liability *to its insured*, not Rockhill's potential liability to the Defendants in the negligence action.

[3] The policy Plaintiff shares a risk on states the insurer will "[p]ay up to our limit of liability for the damages for which the 'insured' is legally liable" and "[p]rovide a defense at our expense by counsel of our choice. . . [o]ur duty to settle or defend ends when the amount we pay for damages resulting from an 'occurrence' equals our limit of liability." (Doc. 216).

incurred in defending the claim against its insured and all costs which may be assessed against its insured").

Defendants correctly note that Plaintiff misstated in its response to Defendants' Motion to Dismiss that "Plaintiff maintains 61.45% of the total risk associated with Mr. Rockhill's policy." (Doc. 216). In fact, Plaintiff's complaint alleges that *Syndicate 1290's* share of the total risk associated with the Rockhill policy is 61.45%. (Doc. 204). Plaintiff maintains an 83% interest in Syndicate 1290. Therefore, Plaintiff necessarily only maintains 51.0035% of the total risk associated with the policy, not 61.45%. The policy limit is $101,500.00. Thus, Plaintiff's total risk on the policy limit is $51,768.55, or $23,231.45 short of the jurisdictional threshold to establish diversity jurisdiction in federal court. As mentioned previously, the total policy limits, or risk thereon, do not alone determine the amount in controversy when evaluating the value of the object of the litigation from the Plaintiff's perspective. Instead, this Court must look at the Plaintiff's obligation in covering the costs of Rockhill's defense in the underlying state court action in conjunction with Plaintiff's share of the policy limits. Therefore, to meet the jurisdictional threshold, Plaintiff's share of the defense must be valued in excess of $23,231.45.

"[C]ourts may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements." *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061-1062 (11th Cir. 2010). It appears to this Court that the amount of defense costs for the Policy's insured in a negligence action seeking damages of $1,000,000 could easily exceed the figure necessary to reach the jurisdictional threshold represented by Plaintiff's share of the risk covered by the Policy. Therefore, this Court concludes the amount in controversy requirement is established by the value of the object of this litigation – the enforcement of a settlement agreement that would prevent Plaintiff from expending substantial

6

amounts of money in the defense of its insured in an underlying state court action. Accordingly, it is

**ORDERED** that Defendants Cody Osting and Carol Osting-Schwinn's Motion to Dismiss (Doc. 211) be **DENIED.** The Defendants shall have ten days to answer the Third Amended Complaint.

**DONE AND ORDERED** in Chambers, in Tampa, Florida this 6th of June, 2011.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to: All parties and counsel of record.