## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

DORNOCH LTD.,                           Case No: 8:05-CV-1460-T-17 TGW
in its individual capacity,

      Plaintiff,

v.

CODY OSTING and
CAROL OSTING-SCHWINN,

      Defendants.

_____/

## PLAINTIFF, DORNOCH LTD.'S,

## RENEWED MOTION FOR SUMMARY JUDGMENT AND

## INCORPORATED MEMORANDUM OF LAW

Plaintiff, Dornoch Ltd., files this Renewed Motion for Summary Judgment and

Incorporated Memorandum of Law pursuant to Federal Rule of Civil Procedure 56 for

the enforcement of a settlement agreement entered into by the parties and states:

## BACKGROUND

Plaintiff is one of the subscribing entities to a homeowner's policy of insurance

held by Michael Rockhill.  The policy issued by Plaintiff to Mr. Rockhill states:

COVERAGE E – Personal Liability

If a claim is made or a suit is brought against an "insured" for
damages because of "bodily injury" or "property damage"
caused by an "occurrence" to which this coverage applies,
we will:

    1.    Pay up to our limit of liability for the damages
for which the "insured" is legally liable.
Damages include prejudgment interest
awarded against the "insured"; and

BERK, MERCHANT |&| SIMS
PLC

> 2.    Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from an "occurrence" equals our limit of liability.

> COVERAGE F – Medical Payments To Others

> We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of accident . . . ."

Per the policy declarations, the policy limits for Coverage E – Personal Liability equaled

$100,000.00. The policy limits for Coverage F – Medical Payments To Others was

$1,000.00. The policy also provided $500.00 for property damage. However, in

addition to these policy limits, the policy provides:

> Section II – Additional Coverages

> We cover the following *in addition to the limits of liability*:

> 1.    Claim Expenses. We pay:

> a.    **Expenses we incur and costs taxed against an "insured" in any suit we defend.**

(Emphasis added).

The factual circumstances, as reiterated by the Court, are as follows:

> On May 11, 2002, Defendant . . . was involved in an accident with Michael Rockhill, Jr. This accident occurred on the property of Michael Rockhill, Sr. (Rockhill) who is the insured. [Defendants] obtained Counsel, and on March 1, 2004, a letter was sent to Markel International Insurance Company, a.k.a Terra Nova Insurance Company, Ltd., (Markel) requesting the information provided for in Florida Statute § 627.4137 (2006). On August 17, 2004, Markel sent

Defendant's Counsel the information it had on the insurance policy for Michael Rockhill, Sr.; however, the policy coverage ended February 13, 2002, which was before the accident occurred. On September 13, 2004, Defendant's Counsel sent a letter to Jan O'Rourke, (O'Rourke) who was the president of American Shield, stating that they have been trying to contact Markel regarding the insurance claim, but asking if American Shield could settle the claim for policy limits, and send the information required by Florida Statute § 627.4137. Finally on September 30, 2004, Defendant's Counsel was informed that the policy through Markel did not cover the accident occurring on May 11, 2002.

On October 12, 2004, William Berk (Berk), counsel for the Plaintiff contacted Defendant's Counsel about the claim presented on behalf of C.O. Berk asked to be provided with a detailed demand package, and ninety (90) days to evaluate the claim. At this time, Berk provided some of the basic information asked for previously by Defendant's Counsel. On November 4, 2004, Berk sent Defendant's Counsel a letter with possible defenses, and enclosed a certified and true copy of Rockhill's insurance policy. On February 1, 2004, Berk sent a letter to Defendant's Counsel stating that Underwriters [were] prepared to settle at the policy limits. On May 12, 2005, Defendant's Counsel sent a letter to Berk confirming the settlement offer, and asking for any documentation that would be needed for the settlement of the claim. The letter also stated that compliance with Florida Statute § 627.4137 would be required for any settlement. On May 19, 2005, Berk sent another letter containing the General Release Forms. Defendant would be required to sign for settlement. In response, on May 26, 2005, Defendant's Counsel sent a letter to Berk stating that revisions were made to the General Release Form; the settlement would have to include property damage, and cost for the guardianship; and full compliance with the statute was still not obtained. Specifically, the actual insurers were not identified, and the policy that was sent was not certified. On May 31, 2005, Berk sent a letter to Defendant's Counsel stating that they agreed to the terms of Defendant's settlement offer as put forth in the May 26, 2005, settlement offer, and said a declaration under oath from Duncan Smith setting forth information required by the Florida Statute § 627.4137 would be forthcoming. Enclosed with the letter were the settlement checks, and an affidavit from Keith

Utermark verifying the insurance policy for Rockhill. On June 1, 2005, Berk sent a letter to the Defendant's Counsel with the declaration from Duncan Smith enclosed.

On June 23, 2005, Defendant's Counsel said they still had not received full compliance with Florida Statute § 627.4137 because they had not received clear information regarding who exactly the carrier was, or firm proof of the extent of the coverage. On June 24, 2005, Berk sent a letter to Defendant's Counsel trying to clarify how the London insurance market works, and how the affidavit and declaration were relevant to fulfilling the requirements of the Florida Statute § 627.4137. On July 19, 2005, Defendant's Counsel sent a letter to Berk stating the declaration from Duncan Smith was not sufficient because it did not sufficiently identify how he was related to the Syndicates from Underwriters, and that the Plaintiffs did not fully comply because they did not provide a statement from the insured which was also required by the statute. Enclosed were the checks for settlement for return and a copy of the lawsuit. On July 20, 2005, Berk sent a letter to the Defendant's Counsel stating that they have never asked for a statement from the insured and the parties already had a binding settlement agreement. On July 26, 2005, Berk sent a letter enclosed with a letter from the insured's agent Deborah Newman. Berk stated that even though it was not required by the settlement offer the plaintiff was still providing the statement from the insured's agent. On July 28, 2005, Defendant's Counsel sent Berk a letter stating that the insured's statement was required by the statute, and the names of the insurers were never actually given because the information was given as syndicate numbers. On August 3, 2005, Berk sent a letter asking Defendant's Counsel to comply with the terms of the settlement agreement, by sending back the releases. On August 13, 2005, Defendant's Counsel sent Berk a letter stating the terms of the agreement were not complied with, and they viewed the August 3rd letter as a new offer that they rejected.

(D.E.118, at 1-4; see also D.E. 168, at 2). In the interim, Rockhill was served with a negligence action. The instant suit for enforcement of the settlement agreement followed.

After defeating a Motion to Dismiss on jurisdictional grounds, the case proceeded to summary judgment.   Upon resolving the disputed facts, the court reconsidered the cross-motions for summary judgment and ruled in favor of Plaintiff, finding that the parties entered into a valid settlement agreement.   As outlined in this Court's previous Order (D.E. 168):

> Both parties agree that on May 26, 2005, Carol Osting-Schwinn's (Defendant) attorney sent a new settlement offer, with a twenty-day lapse period, for essentially the same terms previously offered, and he further highlighted the lack of compliance with the relevant statute. (Dkt. 87, Exh. A, ¶¶ 31-32; Dkt. 96, p. 2; Dkt. 132, ¶ 2). According to [Plaintiff], Mr. Berk, on May 31, 2005, accepted the offer and agreed with all material terms therein. (Dkt. 87, ¶ 21; Dkt. 132, ¶ 2). Defendant maintains that [Plaintiff's] failure to fully comply with all material conditions of the settlement – namely Fla. Stat. § 627.4137 – prevents the legal consummation of a binding agreement. (Dkt. 132, pp. 9-10). Specifically, Defendant alleges that Plaintiffs failed to provide a list of all known insurers that may have coverage liability for the insured. Additionally, Defendant contends that Keith Utermark, president of American Shield, is not a "corporate officer, claims manager, or superintendent" authorized to verify the authenticity of Plaintiffs' policy. Defendant filed a Motion for Summary Judgment on January 19, 2007, (Dkt. 73), and Plaintiffs filed a Motion for Summary Judgment on January 22, 2007, (Dkt. 97). The Court denied each and set forth two disputed issues of fact for the fact-finder to resolve. (Dkt. 118). First, whether Plaintiff satisfied the requirement under Fla. Stat. § 627.4137 to disclose all known insurers. Second, whether Keith Utermark, as president of the American Shield Insurance Group, had the authority under Fla. Stat. § 627.4137 to provide the information enumerated therein on Plaintiffs' behalf. The parties now urge this Court to reconsider their respective motions and issue a final ruling as a matter of law.

(D.E. 168, at 2). As discussed more in depth in the below renewed argument, on reconsideration the Court ruled on the issues as a matter of law and granted summary judgment in favor of Plaintiff.

Defendants appealed the Court's final judgment. On appeal, the Eleventh Circuit Court of Appeals remanded the case on jurisdictional grounds. To that end, Plaintiff filed its Third Amended Complaint in the name of Dornoch Ltd. in an individual capacity as it is one of the subscribing entities of Mr. Rockhill's policy and thereby a party to the settlement agreement entered into by the parties. The Court again denied Defendants' Motion to Dismiss on jurisdictional grounds, holding that the amount in controversy between the parties exceeded the jurisdictional requirement as such amount was established by "the value of the object of this litigation—the enforcement of a settlement agreement that would prevent Plaintiff from expending substantial amounts of money in the defense of its insured in an underlying state court action." (D.E. 226, at 6-7).

Accordingly, as the merits of this action have not changed, Plaintiff renews its previously filed motion for summary judgment.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1.     Defendants set forth conditions for a settlement offer in a letter dated May 26, 2005. (See D.E. 34, ¶ 16).

2.     Said letter set forth an offer of settlement, including all material terms thereto, as follows:

> I will have my client execute the enclosed releases, and my client's claim against your insureds will be settled if you can provide a check representing the full benefits available under this policy for these losses, including the property damage and supplemental payments...made payable to Carol Osting-Schwinn, as parent and legal guardian of

[redacted], a minor, and her attorneys, Swope, Rodante P.A., and full compliance with §627.4137 within 20 days, in order to comply with the court approval requirements.

(See Letter from Dale Swope to William S. Berk dated May 26, 2005, attached as Exhibit "A").

3.      On May 31, 2005, five (5) days later, counsel for Underwriters accepted said offer by letter:

We are pleased to advise we agree with all material terms of your settlement demand, and accept same.

(See letter from William S. Berk to Dale Swope dated May 31, 2005, attached as Exhibit "B").

4.      The letter of May 31, 2005, enclosed four (4) drafts, totaling $101,658.00, payable to Carol Osting-Schwinn, as parent and natural guardian of C.O., a minor, and her attorneys, Swope Rodante, P.A. (See Ex. B).

5.      The insurance contract issued Michael D. Rockhill, Sr., provided a Limit of Liability for Personal Liability in the amount of $100,000.00 for each occurrence and a Limit of Liability for Medical Payments to Others of $1,000.00 for each person.  (See copy of the insurance policy attached hereto as Exhibit "C").

6.      The full text of Florida Statute §627.4137 reads as follows:

(1)      Each insurer which does or may provide liability insurance coverage to pay all or a portion of any claim which might be made shall provide, within 30 days of the written request of the claimant, a statement, under oath, of a corporate officer or the insurer's claims manager or superintendent setting forth the following information with regard to each known policy of insurance, including excess or umbrella insurance:

(a)      The name of the insurer.

(b)      The name of each insured.

(c)     The limits of the liability coverage.

(d)     A statement of any policy or coverage defense which such insurer reasonably believes is available to such insurer at the time of filing such statement.

(e)     A copy of the policy.

In addition, the insured, or her or his insurance agent, upon written request of the claimant or the claimant's attorney, shall disclose the name and coverage of each known insurer to the claimant and shall forward such request for information as required by this subsection to all affected insurers. The insurer shall then supply the information required in this subsection to the claimant within 30 days of receipt of such request.

(2)     The statement required by subsection (1) shall be amended immediately upon discovery of facts calling for an amendment to such statement.

(D.E. 34-1).

7.     Enclosed with the letter addressed to Dale Swope of May 31, 2005, was an affidavit signed by Keith Utermark which read, in part, "[T]he attached policy, LLMH00447 is certified to be a true and correct copy of the complete Police (*sic*) and Endorsements in effect for Michael D. Rockhill, Sr., for the effective dates as shown in the policy." (See Ex. "B").

8.     Enclosed with the same letter was a copy of the policy omitting one (1) endorsement. (See Deposition of Corporate Representative of American Shield Group, p. 15) (D.E. 105).

9.     The endorsement omitted from the copy of the policy provided as an enclosure to the letter to Dale Swope dated May 31, 2005, made two (2) changes to the insurance policy: (a) it changed the second digit of Mr. Rockhill's zip code from a "9" to

a "3" and (b) it changed a word in the name of Mr. Rockhill's mortgagee from "NTIONAL" to "NATIONAL." (See endorsement attached as Exhibit "D").[1]

10.    Neither the terms, conditions, and exclusions of the insurance contract nor the coverage available for claims of any type, including that made by Defendants, were in any way altered by the omitted endorsement. (See Ex. D).

11.    On June 1, 2005, within six (6) days of Defendants' offer, counsel for Underwriters sent a letter to Dale Swope enclosing a Declaration Under Oath signed by Duncan Smith. (See Letter from William S. Berk to Dale Swope dated June 1, 2005, attached as Exhibit "E").

12.    Duncan Smith's Declaration Under Oath included, *inter alia*.

a.    a statement that he is a Claims Manager Professional;

b.    the name of the insurer, Syndicates 861/588/1209 subscribing to Lloyd's policy number UT01AS83;

c.    The name of the Assured, Michael D. Rockhill, Sr.;

d.    The limits of both liability coverage and coverage for medical payments to others (for each person) as well as a limit for damage to property of others;

e.    a statement that "[T]he insurer is not asserting any policy or coverage defenses at this time."

(See Declaration of Duncan Smith attached hereto as Exhibit "F").

13.    Carol Osting-Schwinn never executed the General Release of All Claims enclosed with the letter written by Dale Swope dated May 26, 2005.

---

[1]  The ZIP Code itself was redacted from the copy of the document provided the Court pursuant to Administrative Procedures for Electronic Filing, sec. 1, I.

## MEMORANDUM OF LAW

### I.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986); Industrial Partners, Ltd. v. CSX Transp., Inc., 974 F.2d 153 (11th Cir. 1992).

### II.   GOVERNING CONTRACT PRINCIPLES OF LAW

As outlined by the Court, "[t]he dispute rests on whether a binding settlement agreement exists between the parties." (D.E. 168, at 4).   Under Florida law, the necessary elements for a breach of contract action are: (1) a valid contract, (2) a material breach, and (3) damages.  See Seb S.A. v. Sunbeam Corp., 148 Fed. Appx. 774 (11th Cir. 2005).  As there is no question that Defendants did not, in fact, sign any such release, this would certainly constitute a material breach as a matter of law given that the purpose of the contract was to secure a release of any claims for which Plaintiff might have been liable.  See Atlanta Jet v. Liberty Aircraft Servs., LLC, 866 So. 2d 148 (Fla. 4th Dist. Ct. App. 2004) (material breach occurs when defendant's nonperformance goes to the essence of the contract).  Damages, too, are present in the instant matter of law as Plaintiff has been forced to expend significant sums in providing a defense for its insureds in the lawsuit filed against them by Defendants in the matter styled Osting-Schwinn v. Rockhill, Case Number 05-06257 pending in the Circuit Court in the 13th Judicial Circuit in and for Hillsborough County, Florida.  See Higgins v. State

Farm Fire and Cas. Co., 894 So. 2d 5 (Fla. 2004) (an insurer may suffer damages by providing a defense when it has no legal obligation to do so). Therefore, the sole element necessary to be proven is the existence of a valid contract.

As an elementary principle of law, a contract requires an offer, acceptance of said offer, and consideration. See, e.g., W.R. Townsend Contr., Inc. v. Jensen Civ. Constr., Inc., 728 So. 2d 297 (Fla. 1st Dist. Ct. App. 1999). As noted, Defendants concede the existence of an offer. Consideration is apparent, i.e., Plaintiff's payment of $101,658.00, currently on deposit in this Court's Registry, and Defendants' signing of the proposed release. See, e.g., De Witt v. Miami Transit Co., 95 So. 2d 898 (Fla. 1957) (noting the exchange of a signed release as consideration for payment of damages resulting from an accident). Whether Plaintiff accepted Defendants' offer, then, is the only requirement in dispute.

## III. COMPLIANCE WITH SECTION 627.4137 OF THE FLORIDA STATUTES AS REQUIRED BY THE OFFER

The Court previously held that full compliance with Section 627.4137 of the Florida Statutes was a material element of the settlement agreement. (D.E. 168, at 4). In finding full compliance, the Court analyzed the factual issues and Plaintiff's statutory obligations. (D.E. 168, at 4).

Under Florida law, acceptance of an offer must be absolute and unconditional, identical with the terms of the offer and in the mode, at the place and within the time required by the offer. See Cheverie v. Geisser, 783 So. 2d 1115 (Fla. 4th Dist. Ct. App. 2001). Plaintiff's actions clearly constitute acceptance of Defendants' offer under these standards. To wit, Plaintiff tendered four (4) checks, payable to Defendants and

counsel, representing the full benefits available under the policy and complying with all

duties of an insurer set forth in section 627.4137, which provides:

> (1)   Each insurer which does or may provide liability insurance coverage to pay all or a portion of any claim which might be made shall provide, within 30 days of the written request of the claimant, a statement, under oath, of a corporate officer or the insurer's claims manager or superintendent setting forth the following information with regard to each known policy of insurance, including excess or umbrella insurance:
>
> > (a)   The name of the insurer.
> >
> > (b)   The name of each insured.
> >
> > (c)   The limits of the liability coverage.
> >
> > (d)   A statement of any policy or coverage defense which such insurer reasonably believes is available to such insurer at the time of filing such statement.
> >
> > (e)   A copy of the policy.

(D.E. 34-1).   As Plaintiff has shown, each of the above-listed requirements was

complied with within the twenty-day period set forth in Defendants' offer.

### A.   "Each insurer"

Plaintiff supplied the information requested by Defendants as to "[E]ach insurer,"

the sole insurer being Underwriters.  Both the insured, Michael D. Rockhill, Sr., and his

insurance agent, Deborah Newman, have written statements that have been provided to

the Defendants attesting that they knew of no other insurance providing coverage for

the incident in question.  (See Letter from Deborah Newman to William S. Berk dated

July 22, 2005 attached as Exhibit "G," and Statement of Michael D. Rockhill, Sr., dated

July 26, 2005, attached as Exhibit "H").  Defendants, on the other hand, have proffered

no competent evidence to demonstrate that there was any insurer other than

Underwriters that might have provided liability insurance coverage for any portion of the claim made by Defendants. "Each insurer," then, as used in the statute, refers only to Underwriters.

The Court agreed, finding that "the parties acknowledge that there is no dispute that Plaintiff had no knowledge of any other insures at the time the parties entered into the settlement agreement, nor at any point throughout the contractual period. (D.E. 167). Accordingly, Plaintiff fulfilled its obligations under the statute insofar as it was only required to send information regarding its own policy with the insured." (D.E. 168, at 7).

B.      **"[A] statement, under oath, of...the insurer's claims manager"**

To comply with section 627.4137, Plaintiff provided the Declaration Under Oath of Duncan Smith, Claims Manager Professional for XL London Market Ltd, the entity that handles claims for the syndicates that underwrote the Rockhill's insurance policy. (See Ex. F; Deposition of Colin Miller, p. 72, ll. 12-22 (D.E. 104)). As Defendants have evinced no evidence that Duncan Smith was not, in fact, the insurer's claims manager, there is no question that a statement under oath from Mr. Smith complies with the requirements of section 627.4137.

C.      **"The name of the insurer"**

Plaintiff supplied Defendants with the name of the Rockhill's insurer at the time of the incident for which the claim was asserted, i.e., Underwriters at Lloyd's, London. This insurer was and is authorized to conduct business by the State of Florida under this name. (See Underwriters' at Lloyd's, London, 2001 listing in The Green Book, attached, as Exhibit "I" and Underwriters' at Lloyd's, London, current listing with the

Florida Department of Financial Services, attached as Exhibit "J"). All copies of the insurance contract provided Defendants, including that sent on November 4, 2004, from William S. Berk to Jessica Felix, as well as the copy attested to as true and correct by the president of Underwriters' coverholder—the entity that actually issues hard copies of insurance certificates to policyholders—specifically states that "Insurance is effective with certain **UNDERWRITERS AT LLOYD'S, LONDON.**" (See Ex. C). Plaintiff's counsel sent at least four (4) different letters to Defendants' attorneys, Swope Rodante, P.A., stating that the insurer was Underwriters at Lloyd's, London. (See Letter from William S. Berk to Jessica Felix dated October 12, 2004, attached as Exhibit "K"; Letter from William S. Berk to Jessica Felix dated October 26, 2004, attached as Exhibit "L"; Ex. B; and Letter from William S. Berk to Dale Swope dated June 24, 2005, attached as Exhibit "M"). Additionally, Defendants' counsel, Jessica Felix, advised Dale Swope that Underwriters were "the proper insurer for the May, 2002 accident" on October 5, 2004. (See E-mail from Jessica Felix to Dale Swope dated October 5, 2004, attached as Exhibit "N").

Despite Defendants' claims to the contrary, there is no legitimate issue as to the identity of the insurer providing coverage for Mr. Rockhill. While it could be argued that the Declaration Under Oath of Duncan Smith named something other than Underwriters as Mr. Rockhill's insurer, such an assertion would merely demonstrate a lack of knowledge of the Lloyd's insurance market. Mr. Smith identified the insurer as "XL London Market Ltd for and on behalf of Syndicates 861/588/1209 subscribing to Lloyd's policy number UT01AS83." (See Ex. F). What Mr. Smith did here was list the *specific underwriting syndicates* comprising Underwriters. Mr. Smith, then, provided *more*

information than was required by the statute, not less.[2]  This is also evidenced by Mr.

Smith's reference to "Lloyd's policy number," which is listed on the Declarations Pages

of both copies of the insurance contract provided the Defendant, as the "Authority Ref.

No." (See Ex. C).

### D.    "The name of each insured"

It is undisputed that the name of the policyholder is Michael D. Rockhill, Sr. as

sworn by Duncan Smith and that Plaintiff provided this information to the Defendants.

(See Ex. F).

### E.    "The limits of the liability coverage"

It is undisputed that the limits of liability coverage on the subject insurance

contract were $100,000.00 per occurrence and that the policy further included limits of

$1,000.00 for medical payments to other per person and $500.00 per occurrence for

property damage to property of others as sworn by Duncan Smith and that Plaintiff

provided this information to the Defendants.  (See Ex. F).

### F.    "A statement of any . . . defense which such insurer . . . believes is available"

It is undisputed that Underwriters were not asserting any policy or coverage

defenses at the time of Mr. Smith's signing of his declaration and that Plaintiff provided

this information to the Defendants.  (See Ex. F).

---

[2]  As American stockholders have limited liability whereas Lloyd's "names," i.e., those who are liable for claims under insuring agreements are not, the analogy is not exact, but this would be akin to a State Farm claims manager providing an affidavit listing all mutual funds owning stock in the corporation.

### G.    "A copy of the policy"

Mr. Smith's Declaration Under Oath specifically attests that a copy of the insurance contract would be provided to the Defendants. (See Ex. F). Said copy was provided by Keith Utermark, President of American Shield Group, the coverholder that issued the policy to Mr. Rockhill pursuant to a binding agreement with Underwriters. (See Ex. B and Binding Authority Agreement, attached as Exhibit "O").   While Mr. Utermark is not a "corporate officer" of Underwriters—who, in any event, are not a corporation—or "claims manager or superintendent," all policies issued pursuant to Authority Ref. No. UT01AS83 are binding on Underwriters as to all coverages provided. (See Ex. O).

At deposition, Keith Utermark testified that the copy of the policy provided along with his affidavit may or may not have included one (1) endorsement. (See Deposition of Corporate Representative of American Shield Group, p. 84, ll. 10-20) (D.E. 105). Said endorsement, as noted, *supra*, corrected two (2) typographical errors, i.e., one in the insured's zip code and another in the spelling of a word in the mortgagee's name. (See Ex. F).   Mr. Utermark also testified that the policy itself was complete.   (See Deposition of Corporate Representative of American Shield Group, pp. 88, ll.1-9) (D.E. 105).  There is no dispute that said endorsement in any way affected the coverage available to either the insured or C.O. as the result of any claim.

In addressing this factor, this Court found:

> It is fair to read the statute to allow a corporate executive of a surplus lines insurer to attest to the validity of a policy. Five days after Defendant sent Plaintiffs a new settlement offer requesting full compliance with the statute, they received a copy of the policy with a signed affidavit from Mr. Utermark,

> president of American Shield Group, Plaintiffs' surplus lines agent. This affidavit attested to the validity of the document. Moreover, as Plaintiffs note, "[a]ny surplus lines agent who knowingly or negligently issues a false certificate, cover note, or confirmation of insurance . . . shall, upon conviction, be subject to the penalties provided by s. 624.15 or to any greater applicable penalty otherwise provided by law." Fla. Stat. § 626.922(5). It is fair to say that based on the unique nature of an insurance contract when surplus lines agents are involved it is permissible for Mr. Utermark, as the top corporate executive for American Shield Group, to certify under penalty the policy's authenticity. Accordingly, the parties entered into a binding settlement agreement.

(D.E. 168, at 9).

## IV. INAPPLICABLE SUBSECTIONS OF SECTION 627.4137 OF THE FLORIDA STATUTES

Section 627.4137 sets forth two sets of obligations, one for insurers and one for insureds. Defendants stated, in response to an interrogatory requesting all terms of the settlement offer with which Plaintiff did not comply, that:

> [P]laintiffs failed to timely provide a statement of the insured or his agent disclosing either that the subject policy was the only policy or providing the details of any other policy that did nor might provided liability or other overage...

(See Defendants' Amended and Verified Answers to Plaintiffs' Interrogatories, no. 4, attached as Exhibit "P"). Said statute, however, does not require insurers to provide any such statement. The only requirements for insurers are "[E]ach insurer . . . shall provide . . . within 30 days *of the written request of the claimant*, a statement, under oath . . . ." as discussed, *supra*. (Emphasis added).

The statute may provide for the information described in the Defendants' Response to Interrogatory No. 4. Specifically:

> In addition, the insured, or her or his insurance agent, *upon written request of the claimant or the claimant's attorney*, shall disclose the name and coverage of each known insurer to the claimant and shall forward such request for information as required by this subsection to all affected insurers. The insurer shall then supply the information required in this subsection to the claimant within 30 days of receipt of such request.

See § 627.4137 (emphasis added). This requirement, however, only applies upon written request of the Defendants to the insured or his/her insurance agent. Reading the separate sections of the statute *in para materia*, which is indicated by the phrase "[I]n addition," a party seeking all of the information available under the terms of §627.4137(1) requires at least two (2) separate written requests by the claimant, one to the insurer—"within 30 days of the written request of the claimant"—and one to the insured or his/her insurance agent, i.e., "upon written request of the claimant or the claimant's attorney."

The terms of Defendants' settlement offer were strictly addressed to Underwriters as the Rockhills' insurer:

> I will have my client execute the enclosed releases, and my client's claim against your **insureds** will be settled if...full compliance with §627.4137 within 20 days.

Additionally, Defendants' counsel was advised that or received correspondence clearly indicating that William S. Berk of Adorno & Yoss, P.A., and, subsequently, Berk, Merchant & Sims, PLC, represented Underwriters and *not* any party named Rockhill at minimum six (6) times. (See Letter from Laurie Auth to Jessica Felix dated October 26, 2004 attached as Exhibit "Q"; Ex. K; Letter from William S. Berk to Kathryn Lee dated February 1, 2005, attached as Exhibit "R"; Letter from William S. Berk to Kathryn Lee dated March 8, 2005, attached as Exhibit "S"; Letter from William S. Berk to Dale

Swope dated May 19, 2005, attached as Exhibit "T").[3]  Defendants' counsel's records further indicate that their offices believed Mr. Berk to represent Underwriters.  (See Ex. "N").  Mr. Berk has testified under oath that he did not represent Michael D. Rockhill, Sr. (See Deposition of William S. Berk, 80, p. 40, ll. 22-24) (D.E. 102).  Defendant, then, had absolutely no rational reason to believe that Mr. Berk or any employee of either Adorno & Yoss, P.A., or Berk, Merchant & Sims, PLC, represented the Rockhills.

Conversely, Defendants never contacted the insured and requested the statement allowed pursuant to section 627.4137.  (See Deposition of Dale Swope, p.20, ll.6-14 and p. 69, ll. 24-25 (D.E. 106); Deposition of Carol Osting-Schwinn, p. 21, ll. 11-25 and p. 22, ll. 1-13 (D.E.. 101)).  Neither did Defendant contact the Rockhills' insurance agent, Deborah Newman.  (See Deposition of Keith Utermark, p. 84, ll. 14-22 (confirming that Deborah Newman was the Rockhill's insurance agent) (D.E. 103); Deposition of Dale Swope, p. 57, ll. 13-25 and p. 58, l. 1 (indicating that a review of the policy provided the Defendant reveals that Deborah Newman was the insurance agent); Id., p. 35, ll. 21-25, and p. 69, ll. 22-23 (D.E. 106)).

Lastly, Defendants, through counsel, never specifically requested a statement of the insured or his/her insurance agent prior to June 23, 2005.  (See Deposition of Dale Swope, p. 68, ll. 4-23) (D.E. 106).  As such, Defendant's request at that date was not a material term of the settlement agreement.  Despite this, Plaintiff's counsel undertook to supply the requested statements as a courtesy to the Defendants.  (See Letter from

---

[3]  Defendant's counsel's apparently had some confusion, briefly, as to whom Underwriters' counsel represented as set forth in both his letter addressed to William S. Berk dated May 12, 2005, and his deposition testimony.  (See Deposition of Dale Swope, p. 60, ll. 9-25, p. 61, ll. 1-12).  This was apparently cleared up within two weeks as his settlement offer of May 26, 2006, specifically refers to the Rockhills as "insureds" rather than clients.  (See Ex. A).

William S. Berk to Dale Swope dated July 26, 2005, attached as Exhibit "U," and Letter

from William S. Berk to Dale Swope dated July 29, 2005, attached as Exhibit "V").

Therefore, not only was this information not required as a condition of settlement, but

the Defendants were in no way prejudiced by its temporary absence.[4]

## V.   SUBSTANTIAL PERFORMANCE

In the alternative, Plaintiff asserts that there has been substantial performance of

the conditions set forth in Defendants' offer of settlement of May 26, 2005.   Under

Florida law:

> Substantial performance is that performance of a contract which, while not
> full performance, is so nearly equivalent to what was bargained for
> that that it would be unreasonable to deny the promisee the full contract
> price subject to the promisor's right to recover whatever damages may
> have been occasioned him by the promisee's failure to render full
> performance.

See Tim Givens Bldg. & Remodeling, Inc. v. Cummings, 54 B.R. 292 (Bankr. D. Fla.

2000) (citing Ocean Ridge Dev. Corp. v. Quality Plastering, Inc., 247 So. 2d 72 (Fla. 4th

Dist. Ct. App. 1971)); see also Strategic Res. Group, Inc. v. Knight-Ridder, Inc., 870 So.

2d 846 (Fla. 3d Dist. Ct. App. 2003) ("Substantial performance is performance nearly

equivalent to what was bargained for") (citing Pullam v. Hercules Inc., 711 So. 2d 72

(Fla. 1st Dist. Ct. App. 1998)).   In the instant action, application of the doctrine of

substantial performance would dictate that Defendants execute the release offered in

exchange for the funds and information provided by Plaintiff.

---

[4]  The Rockhills, in fact, had no additional insurance that provided coverage for an incident of
the type for which Defendants claimed damages.   (See Statement of Deborah Newman
attached as Exhibit "W"; Ex. H).

Plaintiff, at minimum, substantially complied with all material terms of the settlement. As noted, *supra*, there is no dispute as to either Plaintiff's tender of all demanded funds or the information set forth in subsections (b), (c), and (d) of section 627.4137(1). The false issue as to whether Underwriters is the name of the insurer is discussed, *supra*, and need not be repeated here.

Additionally, while it is likely that neither of the certified copies of the insurance contract provided the Defendants included the endorsement that had no material effect on any coverage provided, Defendants' counsel concedes that a certified copy of the policy was received by their offices. (See Deposition of Dale Swope, p. 35, ll. 13-15 ("a copy of – a certified copy of the policy which ultimately did include the name of the agent and told us that the agent was Jan O'Rourke.") (D.E. 106). Neither Plaintiff nor its representatives or counsel provided a copy of the insurance contract to Defendants at any time after May 31, 2005. (See Affidavit of William S. Berk). Defendant, then, concedes to having received a certified copy of the insurance contract *before* the expiration date of the settlement offer. The meaningless and inadvertent omission of the endorsement in question—an omission unnoticed by the Defendants until over a year into this pre-appellate litigation—in no way had any material effect on the Defendants' position.

Lastly, assuming, *arguendo* that a statement from the insured and his/her insurance agent were actually a term of settlement, statements from *both* were provided within five (5) weeks of the original clarification of Mr. Swope's interpretation of the phrase "full compliance." (See Letter from Dale Swope to William S. Berk dated June 23, 2005, attached as Exhibit "X"; Ex. U; and Ex. V). It should also be noted that

Defendants had two (2) weeks between the tender of information by Plaintiff and the arbitrary settlement deadline and Defendants in no way attempted to contact Plaintiff's counsel to clarify that such information was incomplete.   The referenced statements clearly indicate that there was no other insurance in force that could possibly have applied to the claim.  Defendants were in no way prejudiced by any such delay.

## VI.   PUBLIC POLICY FAVORS SETTLEMENT IN THIS MATTER

As a principle of law, settlements are highly favored and will be enforced whenever possible.  See Robbie v. Miami, 469 So. 2d 1384 (Fla. 1985); Pearson v. Ecological Science Corp., 522 F.2d 171 (5th Cir. 1975); Dorson v. Dorson, 393 So. 2d 632 (Fla. 4th Dist. Ct. App. 1981).  In the instant action, a clear settlement was reached and should be enforced.

Diligence of counsel should be encouraged as it leads to a more rapid resolution of claims while preserving resources, both judicial and monetary.   In this matter, the submission of a claim to an insurer was delayed nearly three (3) months due to Defendants' counsel mistakenly attempting to secure insurance information regarding Defendants' husband, Fred Schwinn.  (See Letter from Jessica Felix to Markel International Insurance Company ("Markel") dated December 18, 2003 attached hereto as Exhibit "Y").[5]   The next correspondence to Markel, in March of 2004, sought information regarding Michael *Rockwell*, an unknown person, despite the fact that Defendant was a neighbor and friend of the Rockhills.  (See Letter from Jessica Felix to Markel and Terra Nova Insurance Company, Ltd. ("Terra Nova"), dated March 1, 2004,

---

[5]   All correspondence to Markel International Insurance Company or Terra Nova Insurance Company was produced by Defendants.  Plaintiff denies any knowledge of any correspondence between Defendants and these entities prior to the initiation of litigation against Michael Rockhill, Sr., and Michael Rockhill, Jr.

attached as Exhibit "Z," and Letter from Jessica Felix to Jan O'Rourke dated September 13, 2004, (stating that "[O]ur client and her husband are friends with Mr. Rockhill") attached as Exhibit "AA")).   Defendants' counsel followed up with Markel in writing, nearly four (4) months later, requesting information relative to Michael Rockhill and supplying a policy number.

Markel responded on August 17, 2004, supplying the information required by section 627.4137, including a copy of the policy.   (See Letter from T.C.E. Barden to Jessica Felix dated August 17, 2004, attached as Exhibit "BB").   Despite the fact that the declarations page of the referenced insurance contract clearly showed effective dates of February 13, 2001, to February 13, 2002—which would place the date of claim, i.e., May 11, 2002, *outside* the policy period by a matter of months, Defendant attempted to send a settlement demand to Markel through the surplus lines agent, Jan O'Rourke of American Shield Group, on September 13, 2004.   Markel advised Defendant of error by letter.   (See Letter from Matthew E.C. Pifer to Jessica Felix dated September 30, 2004 attached as Exhibit "CC").   Defendants would only discover the identity of Mr. Rockhill's proper insurer on October 5, 2004, by a phone call from Berk. (See Ex. N).   Thus, after nearly ten (10) months, Defendants' counsel finally was in contact with the proper insurer, through the direct effort of Plaintiff.   (See Deposition of Dale Swope, p. 12, ll. 16-17) (D.E. 106).

After this phone conference, however, Defendants' counsel refused to communicate with Plaintiff's counsel for over six months, despite six different letters and numerous telephone calls to Swope Rodante, P.A.   (See Ex. K; Letter from William S. Berk to Jessica Felix dated October 21, 2004, attached as Exhibit "DD"; Ex. L; Letter

from William S. Berk to Jessica Felix dated November 4, 2004, attached as Exhibit "EE"; Ex. N; Ex. R; and Ex. S). Those of February 1 and March 8, 2004, included settlement offers, offers that were further communicated both in writing and by telephone. (See Letter from William S. Berk to Kathryn Lee dated April 25, 2004, attached as Exhibit "FF", and e-mail correspondence from Kathryn E. Lee to "Osting v Wombat" dated April 13, 2005, attached as Exhibit "GG"). Defendants' counsel did not acknowledge any of this correspondence prior to May 12, 2005, eight months after being advised that Underwriters were the insurer of interest and over three months after the first offer of settlement by Underwriters. (See Letter from Dale Swope to William S. Berk dated May 12, 2005, attached as Exhibit "HH").

Given that it took Defendants' counsel nearly a year and a half from the time of their initial inquiry into the identity of Mr. Rockhill's insurance carrier until actually initiating contact with Underwriters, the inescapable conclusion is that the deadline of 20 days set forth in Defendants' offer of May 26, 2005, was wholly artificial. At least two justices of the Florida Supreme Court have decided, on the record, that Defendants' counsel has set artificial deadlines for settlement offers in the past then withdrew them so as to create so-called "bad faith" claims. See Berges v. Infinity Ins. Co., 896 So. 2d 665, 685 (Fla. 2004). As noted by Justices Wells and Cantero, such strategies as those employed by the Defendants are:

> greatly detrimental to Florida's liability insurance consumers because of the increases in their insurance costs…Just as it is an obvious truth that "there is no free lunch," likewise, there is no free liability insurance. It is an undeniable fact which follows logic and common sense that…judgments against insurers drive up the premium costs for all insureds…Initially, this amount may come out of an insurer's profits, but eventually the someones are the other insureds, whose premiums are increased.

<u>Id.</u>  Given the current insurance crisis in Florida, allowing strategies such as those employed by Defendants, i.e., refusing to settle cases despite the obvious intention of the insurer to do so, will only make insurance more difficult and costly, particularly for those who must turn to surplus lines insurers—those that insure risks, such as Mr. Rockhill's mobile home, that cannot be insured by Florida insurance companies—such as Underwriters.  <u>See</u> Miami Herald, "Can Tallahassee begin solving the insurance crisis?", January 15, 2007; Houston Chronicle, "In the Sunshine State, an insurance battle is underway," January 16, 2007.

Lastly, parties should be expected to communicate clearly and effectively.  The refusal of Defendants' counsel to communicate in any way despite numerous phone calls and letters, including settlement offers, is documented, *supra*, and will not be set forth again.  Additionally, Defendants' counsel himself could not maintain consistency at all as to what constituted "complete compliance" with §627.4137.  For example, on June 23, 2005, Swope stated that he had been seeking, *inter alia*, "the statement of the insured or his agent disclosing either that this is the only policy . . . ." for "at least five months."  (<u>See</u> Ex. X).  Swope states a month later, however, that he had been asking "for a statement from the insured or their agent since **May 12**."  (<u>See</u> Letter from Dale Swope to William S. Berk dated July 28, 2005, attached as Exhibit "II").[6]  If Defendants' counsel cannot determine what information he is seeking and when he requested it, it would be impossible for Plaintiff to do so.

---

[6]  The letter of May 12, 2005, advised that "I have yet to receive full compliance with Florida Statutes (*sic*) §627.4137."  (<u>See</u> Ex. HH).

This is not the sole incident evidencing such inconsistent thinking regarding the actions required to constitute "full compliance." In his letter of July 28, 2005, Swope, in discussing the statement of Deborah Newman, states "even more frustratingly, her July 22 letter still does not provide the information authorized by §627.4137." At deposition, however, Swope states affirmatively that the very same statement complied with the statute. (See Deposition of Dale Swope, p. 59, ll. 20-25 (stating that the contents of the statement go "well beyond what the statute requires.")) (D.E 106). What is clear, then, is that Defendants cannot consistently define "full compliance" with regard to Florida Statute 627.4137 yet expected Plaintiff to do so.

## CONCLUSION

In accordance with this Court's prior Order (D.E. 168), Plaintiff respectfully requests that the Court grant Plaintiff's Renewed Motion for Summary Judgment and enter judgment in favor of Plaintiff thereby calling for the enforcement of the settlement agreement between the parties; requiring Defendants to execute a general release containing such terms as set forth in the settlement offer of May 26, 2005; permanently enjoining an action in any court, state or federal, with regard to Plaintiff, Underwriters, its subscribing entities or its insureds, Michael Rockhill, Sr., Michael Rockhill, Jr., and Vicki Rockhill, arising out of the incident occurring in Plant City, Florida, on May 11, 2002, for which Defendants made claim; and for any other relief this Court deems just and proper.

Respectfully submitted,

Berk, Merchant & Sims, PLC

**/s/ Melissa M. Sims**
William S. Berk
Florida Bar No.: 349828

BERK, MERCHANT & SIMS
PLC

2 ALHAMBRA PLAZA, SUITE 700 ● CORAL GABLES, FLORIDA 33134 ●PHONE: 786.338.2900 ● FAX: 786.338.2888

wberk@berklawfirm.com
Melissa M. Sims
Florida Bar No.: 85936
msims@berklawfirm.com
Sorraya M. Solages
Florida Bar No.:  568856
ssolages@berklawfirm.com
2 Alhambra Plaza
Suite 700
Coral Gables, Florida 33134
786.338.2896
786.338.2888 – Fax

### CERTIFICATE OF SERVICE

I hereby certify that on September 21, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

### SERVICE LIST

Dale Swope, Esquire
Shea Moxon, Esquire
Lisha Bowen, Esquire
Brandon Cathey, Esquire
Swope Rodante, P.A.
1234 E. 5th Avenue
Tampa, Florida 33605
Tel:    813-273-0017
Fax:    813-223-3678

**/s/ Melissa M. Sims**
Melissa M. Sims